Case 3:15-cv-00282 Document 31 Filed in TXSD on 07/31/16 Page 1 of 20

United States District Court
Southern District of Texas
**ENTERED**
August 03, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| DAVIES INNOVATIONS INC., | § § | |
| Plaintiff, | § § | |
| v | § § § | CIVIL ACTION NO. 3:15-cv-282 |
| STRUM, RUGER & COMPANY, INC., | § § § | |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Davies Innovations, Inc. ("Davies Innovations") is a Delaware corporation with its principal place of business in Costa Mesa, California. Defendant Strum, Ruger & Company, Inc. ("Ruger") is also a Delaware corporation, with its corporate headquarters in Southport, Connecticut and three manufacturing locations, including a manufacturing location in Newport, New Hampshire. Pending before the Court is the Motion to Transfer Venue filed by Ruger. (Dkt. 18). Having reviewed the motion, the briefing and evidence, and the governing legal authorities, the Court **GRANTS** the motion and hereby **TRANSFERS** this case to the United States District Court for the District of New Hampshire.

### BACKGROUND

This is a patent infringement lawsuit. The patent at issue in this case, United States Patent No. 7,827,722 BA ("the '722 Patent") was issued on November 9, 2010 and was for a "RIFLE." The inventor of the '722 Patent was Robert B. Davies of Tempe, Arizona,

1

who was the President of an Arizona corporation, Advanced Device Design. Mr. Davies passed away in October 2012. According to Davies Innovations, the rights to the '722 Patent were then transferred to Mr. Davies' friend and business associate, David Stanowski. Stanowski recorded this assignment with the United States Patent & Trademark Office on March 12, 2015. Stanowski then ultimately transferred those rights to Davies Innovations, the plaintiff in this case, on October 7, 2015. Two days later, Davies Innovations filed this lawsuit alleging that Ruger had infringed the '722 patent. Dkt. 1.[1]

In its Complaint, Davies Innovations alleges that venue was proper in this Court because Ruger transacts business within the Southern District of Texas. Ruger has now moved to transfer this case under 28 U.S.C. § 1404(a) to the United States District Court for the District of New Hampshire. Dkt. 18. Ruger contends that the case should be transferred to New Hampshire because all of the design, development, and testing of the accused Ruger products occurred in New Hampshire, the Ruger employees at issue work primarily at Ruger's New Hampshire facility, and the accused Ruger rifles were manufactured in New Hampshire until 2015, after which the manufacturing took place in North Carolina.

---

[1] The same day, Davies Innovations also filed suit against Sig Sauer, Inc. ("Sig Sauer"), alleging that Sig Sauer similarly violated the '722 patent. *Davies Innovations v. Sig Sauer, Inc.*, No. 3:15-cv-00281, in the United States District Court for the Southern District of Texas, Galveston Division. Like Ruger, Sig Sauer has also moved to transfer that case to the United States District Court for the District of New Hampshire.

In response, Davies Innovations argues that this Court should primarily focus on the convenience and location of Stanowski, whom it describes as a "crucial non-party witness" residing in Galveston, Texas. Dkt. 24. Alleging that Stanowski was a close friend and business partner of the deceased inventor, Davies Innovations contends that Stanowski will be its only source of testimony on several important topics in the case. In addition, Davies Innovations contends that Stanowski had previously transferred "thousands of pages" relating to the inventor's business and patents to Galveston, Texas, and that a local Galveston organization founded by Stanowski has a financial interest in the outcome of this case.

## APPLICABLE LAW

Section 1404(a) allows a district court to transfer a civil action "for the convenience of parties and witnesses, in the interest of justice ... to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "The district court has broad discretion in deciding whether to order a transfer." *Caldwell v. Palmetto State Sav. Bank of S.C.*, 811 F.2d 916, 919 (5th Cir. 1987).

This is a patent lawsuit, and the Federal Circuit applies the law of the Fifth Circuit to evaluate transfer of venue motions that arise in this Court. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). First, the Court must ask whether this suit might have been brought in the transferee venue of New Hampshire. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc) (*In re Volkswagen II*). If the transferee venue is proper, it then is Ruger's burden to demonstrate that New Hampshire

is clearly more convenient than the venue chosen by the plaintiff, i.e., Galveston, Texas. *Id.* at 315.

To determine whether Ruger has met this burden, the Court must analyze a set of public and private interest factors, no single one of which is dispositive. The private-interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*In re Volkswagen I*). The public-interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* The Court must "weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Atlantic Marine Construction Company, Inc. v. United States Dist. Court for the Western Dist. of Texas*, — U.S. —, —, 134 S. Ct. 568, 581, 187 L. Ed. 2d 487 (2013).

The Fifth Circuit has stated that the party seeking the transfer "'must show good cause' for the transfer"—in other words, "the moving party must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *In re Volkswagen II*, 545 F.3d at 315 (quoting 28 U.S.C. § 1404(a)). If the movant "demonstrates that the transferee venue is clearly

4

more convenient" than the plaintiff's chosen venue, the district court should grant the transfer. *Id.*[2]

## ANALYSIS

### A. Could this lawsuit have been brought in the District of New Hampshire?

Ruger contends that this case could have been filed in the District of New Hampshire. Davies Innovations does not argue otherwise.

Ruger is a Delaware corporation, with its corporate headquarters in Southport, Connecticut, it manufactures its products in New Hampshire, and it sells its products throughout the United States, including New Hampshire. Accordingly, the Court finds that this lawsuit could have been brought in the District of New Hampshire. *See* 28 U.S.C. §§ 1391(b)-(d), 1400(b) ("Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.").

The Court next turns to analyze the relevant private and public interest factors. While no single factor is dispositive, the Court is mindful that the Federal Circuit has given some guidance on the balancing of particular factors. *See, e.g., In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) (applying Fifth Circuit law). "[I]n a case featuring most witnesses and evidence closer to the transferee venue with few or no

---

[2] The plaintiff's choice of venue is not a distinct factor in the § 1404(a) analysis, instead, the Fifth Circuit has stated that, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *In re Volkswagen II*, 545 F.3d at 311. Thus, by requiring that a movant show the transferee venue is "clearly more convenient," "[a] plaintiff's choice of [venue] is given 'some'—significant but non-determinative—weight." *Weber v. PACPT XPP Technologies, AG*, 811 F.3d 758 (5th Cir. 2016) (citing *Atl. Marine*, 134 S. Ct. at 581 n.6.).

convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer."). However, as the Fifth Circuit has noted, balancing these factors involves more than "a raw counting of the factors in each side, weighing each the same and deciding transfer on the resulting score." *In re Radmax*, 720 F.3d 285, 290 n.8 (5th Cir. 2013).

### B. Private-Interest Factors

#### 1. Relative Ease of Access to Sources of Proof

Ruger contends that New Hampshire is a clearly more convenient venue because all of the relevant witnesses work on a daily or regular basis in New Hampshire, listing four Ruger engineers who are either assigned to Ruger's New Hampshire facility, or in one case, an independent contractor who travels from Ohio to work at Ruger's New Hampshire facility on a seasonal basis. Ruger's New Hampshire facility also contains its IT technology hub. Ruger lists the name of two other witnesses who work out of the New Hampshire and Southport facilities, and it explains these witnesses would testify on the disputes issues of damages and good faith. Documents related to sales, costs and profits of the accused Ruger products are located in either Newport, New Hampshire or Southport, Connecticut. Additionally, Ruger has provided statements from its employees that they would willingly travel from Southport Connecticut to Newport, New Hampshire and that Ruger personnel make this trip on a regular basis. Further, Ruger contends that the majority of documents and evidence related to the design, development, and testing of the accused Ruger products are in its New Hampshire facility.

"'In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.'" *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (applying Fifth Circuit law, granting mandamus relief for the district court's denial of a motion to transfer venue to the Northern District of California). Ruger has shown that the majority of its documents and physical evidence are in New Hampshire, or are easily transportable to New Hampshire from its Southport, Connecticut facility. Even if some or a majority of the documentary evidence is stored electronically, "this does not negate the significance of having trial closer to where [Ruger's] physical documents and employee notebooks are located," because "the critical inquiry is relative ease of access, not absolute ease of access." *In re Toa Technologies*, 543 Fed. App'x 1006, 1009 (Fed. Cir. 2013) (noting, "Since no party is headquartered in the Eastern District of Texas, and the existence of physical sources of proof in the Northern District of Ohio makes that venue more convenient for trial, this factor should have been weighed in favor of transfer."); *see also In re Volkswagen I*, 545 F.3d at 316 (noting, "All of the documents and physical evidence relating to the accident are located in the Dallas Division, as is the collision site.").

In response, Davies Innovations contends that "several thousand pages of documents and digital files that all relate to [the inventor's] rifle patents" have been in Stanowski's possession in Galveston since 2012. However, the evidence presented by Davies Innovations also shows that the inventor held several patents other than the one at

7

issue in this case, and it is unclear how many of the documents that are in Galveston will relate to the case at hand.

The Court finds that this factor weighs in favor of transfer to New Hampshire.

### 2. Availability of Compulsory Process to Secure the Attendance of Unwilling Witnesses

The second private interest factor instructs the Court to consider the availability of compulsory process to secure the attendance of unwilling witnesses by a court order. *See In re Volkswagen II*, 545 F.3d at 316; *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 n.6, 187 L. Ed. 2d 487 (2013). Under the Federal Rules of Civil Procedure, a district court may enforce a subpoena issued to any witness for trial, hearing or deposition within 100 miles of the place in which that witness resides, works, or regularly transacts business in person, or for a trial, anywhere within the state in which the witness works, resides, or regularly transacts business in person, provided that witness does not incur substantial expense. FED. R. CIV. P. 45(c)(1)(A)-(B).

In compiling the list of potential witnesses to review the availability of compulsory process, the Court has reviewed the motion to transfer and related briefing, as well as the parties' filings and the Certificates of Interested Parties. *See, e.g., In re Apple*, 581 Fed. App'x 886, 888 (Fed. Cir. 2014) (finding district court should have considered all prospective witnesses identified in the record, including those identified in reply briefs and initial disclosures.)

Some courts in this District have noted that witnesses who are employed by one party to the litigation are often required by their employers to attend and testify at trial,

8

even if they are not within the subpoena power of the Court. *See, e.g., JPT Group, LLC. v. Steven Madden Retail, Inc.*, CV H-15-3264, 2016 WL 3523878, at *3 (S.D. Tex. June 28, 2016); *Pension Advisory Grp. Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 711 (S.D. Tex. 2011) (finding that a "motion to transfer under 28 U.S.C. § 1404(a) may be denied when the witnesses are employees of the defendant and their presence can be obtained by the party")). The Court notes that the Federal Circuit has not adopted this approach—even in cases arising within the Fifth Circuit. Instead, the Federal Circuit evaluates the availability of compulsory process for unwilling witnesses without regard to their status as employees of a party. *See, e.g., In re Toa Technologies*, 543 Fed. App'x 1006, 1009 (Fed. Cir. 2013) ("Moreover, because party witnesses and three former chief financial officers of TOA were identified as residing within 100 miles of the Northern District of Ohio, transfer ensures that these individuals could be compelled to appear for both deposition and trial."); *In re Acer America Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010) (comparing the subpoena power of the Eastern District of Texas with that of the Northern District of California without regard to whether witnesses were employees or party witnesses).

Here, Ruger lists several potential witnesses, all current Ruger employees or contractors, each of whom resides or regularly works in Ruger's Newport, New Hampshire facility. The United States District Court for the District of New Hampshire is in Concord, New Hampshire, approximately 41 miles by car from Newport, New Hampshire. Ruger does not contend that any of these witnesses are unwilling to attend trial in Galveston or in New Hampshire—it does affirm, however, that its witnesses who

9

reside in Connecticut instead of New Hampshire regularly travel to Newport, New Hampshire The Court finds that, should compulsory process be necessary, these Ruger witnesses would be out of the range of this Court, but not the New Hampshire court.

Davies Innovations lists four potential witnesses for its case, providing the names of only two. Davies Innovations focuses its briefing on Stanowski, whom it alleges is a Galveston resident. Although Davies Innovations describes Stanowski as a non-party fact witness—carefully noting he is "not an employee or officer of either party"—the Court also notes that Stanowski is listed as a person with a "financial interest in the outcome of this litigation" on Davies Innovations' Certificate of Interested Parties.[3] Davies Innovations also intends to call an unamed "corporate fact witness" from its offices in California; an unamed "yet-to-be determined expert witness on infringement, validity, willful infringement, and damages"; and the prosecuting attorney for the patent-in-suit, Robert Parsons, who is located in Scottsdale, Arizona. Davis Innovations does not contend that any of these witnesses are unwilling to attend trial in Galveston or in New Hampshire.

In considering the availability of compulsory process to secure the attendance of Stanowski, the Court notes this case presents an unusual set of circumstances—according

---

[3] Davis Innovations also lists other entities as having a financial interest, including: (1) its current counsel, a Texas law firm with offices in Fort Worth, Texas; (2) Wi-LAN Technologies, Inc. and Wi-LAN, Inc., the parent companies of Davies Innovations; and (3) Galveston Open Government Project, Inc., an organization that "was organized to examine and critique local government and suggest ways to 'improve its accountability to the voters.'" Galveston Open Government Project, Inc. has been a litigant in this Court, and to the extent necessary, the Court takes judicial notice of its own docket in cause no. 3:13-cv-439, *Galveston Open Government Project et al v. United States Department of Housing and Urban Development et al*. None of these entities are alleged to be potential witnesses in this patent lawsuit. .

10

to Davies Innovation's own pleadings, Stanowski is deeply interested in the outcome of this litigation. In fact, he actually held the rights to the patent shortly before this lawsuit was filed, and he transferred those rights to Davies Innovations for the purpose of this lawsuit. In addition, Stanowski has a financial interest in the outcome of this case. His interest is so strong that Davies Innovations has actually contended that Stanowski is "akin to the Plaintiff, such that [his] for[u]m should be given a strong presumption." The Court finds that, should compulsory process be necessary, Stanowski would be out of the range of the New Hampshire court, but not this Court.

Finally, the Court finds that Davies Innovations' proposed Arizona and California witnesses would be out of the range of compulsory process of both this Court and the New Hampshire court.

Accordingly, the Court finds that this factor is neutral.

### 3. Cost of Attendance for Willing Witnesses

This factor considers the cost of attendance for those witnesses that are more than 100 miles away from the court. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen I*, 371 F.3d at 204–05. The Federal Circuit has described this factor as "probably the single most important factor in the transfer analysis." *In re Genetech*, 566 F.3d 1338, 1343 (Fed. Cir. 2009). The inconvenience to witnesses increases with the additional distance to be traveled, including additional travel time, meal, lodging expenses, and time away from their regular employment. *Volkswagen I*,

11

371 F.3d at 205. The Court must also consider the personal costs associated with being away from work, family, and community. *In re Acer America Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010), *cert denied*, — U.S. —, 131 S. Ct. 2447, 179 L. Ed. 2d 1235 (2011) (citing *Volkswagen II*, 545 F.3d at 317).

Courts in this Circuit often give greater weight to the relative convenience of key witnesses and key non-party witnesses in this analysis, and at least one court has noted that "the convenience of one key witness may outweigh the convenience of numerous less important witnesses." *Mid-Continent Cas. Co. v. Petroleum Solutions, Inc.*, 629 F. Supp. 2d 759, 762–63 (S.D. Tex. 2009). Davies Innovations contends that these cases stand for the blanket proposition that the convenience of an in-state non-party witness "'trumps' the inconvenience of out-of-state party employee witnesses." Dkt. 24. The cases that Davies Innovations relies upon actually set out a more nuanced analysis. *See, e.g., Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 826 (S.D. Tex. 1993) (declining to transfer maritime personal injury case to Western District of Louisiana, finding that plaintiff's current treating physician was "one of [his] most important witnesses" and that physician resided in Houston, Texas); *Continental Airlines, Inc. v. American Airlines, Inc.*, 805 F. Supp. 1392, 1397 (S.D. Tex. 1992) (denying motion to transfer to Northern District of Texas where movant made only a general allegations that certain witnesses would be necessary, without identifying the witnesses or the substance of their testimony). *See also In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) (finding, "[a] district court should assess the relevance and materiality of the information the witness may provide. Requiring the defendant to show that the potential witness has

12

more than relevant and material information at this point in litigation or risk facing denial of transfer on that basis is unnecessary.").

Here, as noted above, Ruger has listed the names, job titles, and working locations of six witnesses, all of whom either (1) work out its Newport, New Hampshire facility or (2) regularly travel to that location. Ruger has also given a brief description of why the testimony of each of these witnesses will be important to its defense of this patent infringement case. To travel to this Court, Ruger has shown that these witnesses would be required to travel between 40 to 60 miles to the nearest major airport, take a flight to Houston lasting at least 4 hours, and then drive no less than 45 miles to the Courthouse in Galveston. In contrast, the Concord, New Hampshire Courthouse is approximately 42 miles from Newport.

Ruger has shown that travel to Galveston would mean that these witnesses would incur significant travel time, hundreds of dollars in economic costs, time away from their regular employment, and significant time away from family and community. In contrast, these witnesses are much closer to the United States District Court in Concord, New Hampshire—less than 50 miles from Ruger's New Hampshire facility, thus greatly reducing the amount of time, effort, and expense incurred by these witnesses.

Davies Innovations points out that these witnesses are employed by Ruger, and it contends that their level of convenience or inconvenience should be discounted because they are "party witnesses." In contrast, Davies Innovations argues that Stanowski is not an employee or officer of Davies Innovations, and thus it describes him as a "non-party witness" whose convenience should be weighed more heavily. As noted above, however,

13

Stanowski has an admitted personal and financial interest in the outcome of this case—in addition to his close relationship with the deceased inventor, his affidavit states that he has "partnered with Wi-Lan Technologies to bring this litigation because I did not have resources on my own to do so also in order to try and protect the property rights Mr. Davies left me in his will." None of the cases relied upon by Davies Innovations addresses this particular situation.

Turning to Davies Innovations' witnesses, Stanowski is a resident of Galveston, Texas. Stanowski lives approximately two miles by car from this Courthouse. Davies Innovations describes Stanowski as "one of the only witnesses who can provide relevant testimony for several relevant topics in this litigation," including the inventor's development and creation of the rifle improvements at issue, Stanowski's business dealings with the inventor, the marketing and licensing history of the '722 patent, and "substantial factual background testimony regarding the inventor's work history and life." Travelling to Concord, New Hampshire from Galveston, Texas would be along the reverse of the route described above: driving no less than 45 miles to an airport, a flight in excess of 4 hours, and then driving at least 40 miles to Concord, New Hampshire. This route involves significant travel time, hundreds of dollars in economic costs, time away from regular employment, and significant time away from family and community.

Considering Davies Innovations' other witnesses in Arizona and California, the Court finds that their level of inconvenience would be relatively similar whether the trial is held in Galveston or New Hampshire. *See, e.g., In re Genetech*, 566 F.3d at 1344 (noting that witnesses from Europe would be required to travel a significant distance no

matter whether they testify). Nonstop flights from John Wayne Airport—approximately 4 miles from Costa Mesa, California—are available to Houston Intercontinental Airport (approximately 3.5 hours), and nonstop flights from Los Angeles International Airport—approximately 40 miles from Costa Mesa, California—are available to Boston Logan (approximately 6 hours). Nonstop flights from Phoenix, Arizona are also available to both Houston (2.5 hours) and Boston Logan (5 hours). Although the time spent in flight is slightly longer for travel to Concord, New Hampshire for these witnesses, the Court finds that their overall levels of inconvenience, *i.e.*, the total economic costs of travel as well as the total personal toll, would be functionally similar for travel to either Galveston, Texas or Concord, New Hampshire.

Ultimately, although it is far from a mechanical calculation, the Court finds that this factor weighs in favor of transfer.

### 4. All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive

For this factor, courts consider whether transfer would delay already protracted litigation. *In re Radmax, Ltd.*, 720 F.3d 285, 289 (5th Cir. 2013). Additionally, the courts consider the efficiency of the court system in handling several related lawsuits in the same district. *Acad., Ltd. v. A & J Mfg., LLC*, No. H-14-2043, 2014 WL 6679260, at *4 (S.D. Tex. Nov. 25, 2014) (granting a motion to transfer venue where there was pending litigation concerning the same patents in the proposed venue, reasoning that "it will be more efficient for the court system if the same court determines" the issue of infringement).

15

However "garden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer. Were it, delay would militate against transfer in every case." *In re Radmax, Ltd.*, 720 F.3d 285, 289 (5th Cir. 2013). Here, the Court finds that there is no evidence or "rare and special circumstances" establishing that transferring this case would cause significant delay or prejudice to any of the parties. Further, the Court notes that this case is still in its early stages.

This factor is neutral.

**B. Public-Interest Factors**

### 1. Administrative Difficulties Flowing from Court Congestion

"To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor." *Genentech*, 566 F.3d at 1347. The Federal Circuit has noted that the court congestion factor "appears to be the most speculative" and that "case-disposition statistics may not always tell the whole story." *Id.*

Davies Innovations points to statistics showing that, over the last ten years, the Southern District of Texas has handled over 5 times as many patent cases as the District of New Hampshire. This is not particularly surprising in light of the fact that the Southern District of Texas currently has 17 sitting judges (with 2 vacant benches), spread over seven divisions: Brownsville, Corpus Christi, Galveston, Houston, Laredo, McAllen, and

Victoria.[4] In contrast, the District of New Hampshire is a single-division court, with 3 judges (and no vacancies).

In the 12-month period ending in March 2016, the Southern District of Texas had over 6,000 civil filings—354 cases for each of the 17 sitting Article III judges.[5] Median time from filing to disposition of civil cases was 7.3 months, and median time from filing to trial for civil cases was 23.1 months. In the same period, the District of New Hampshire had 528 civil filings—176 per judgeship. Median time from filing to disposition of civil cases was 7.9 months.[6]

The Court finds that this factor is neutral.

### 2. Local Interest in Having Localized Interests Decided at Home

The local interest factor analyzes the "factual connection" that a case has with both the transferee and transferor venues. *In re Volkswagen I*, 371 F.3d 201, 206 (5th Cir. 2004). Ruger contends that New Hampshire has a stronger local interest because "a district does have a significant local interest in a patent case when one of the parties is located in its borders[.]" *RSI Video Techs., Inc. v. Vacant Prop. Sec., LLC,* No. 3:13-cv-00170, 2013 WL 5530619, at *4 (S.D. Tex. Oct. 4, 2013). Ruger also contends that the accused products were designed, developed, tested, and manufactured in New Hampshire, and the employees who are alleged to have violated the patent have, in

---

[4] *See* Administrative Office of the U.S. Courts, "Current Judicial Vacancies," *available at* http://www.uscourts.gov/judges-judgeships/judicial-vacancies/current-judicial-vacancies.

[5] *See* Administrative Office of the U.S. Courts, "U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (March 31, 2016)", *available at* http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2016/03/31-1.

[6] Median time from filing to trial for civil cases was not available for the New Hampshire court over this time period.

17

essence, been impugned. *See Minka Lighting, Inc. v. Trans Globe Imports, Inc.*, No. 3:02-cv-2538, 2003 WL 21251684, at *1 (N.D. Tex. May 23, 2003) ("In a patent infringement action, the preferred forum is that which is the center of gravity of the accused activity."). "Indeed, the trier of fact ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production." *Id.* at *2 (citations omitted); *In re Toa Technologies*, 543 Fed. App'x 1006, 1009 (Fed. Cir. 2013) (finding the Northern District of Ohio had a local interest in deciding the case because defendant was headquartered in Ohio and maintained 55 employees there).

In response, Davies Innovations argues that Stanowski's local organization has a financial interest in the case. In light of the Fifth Circuit's analysis of this factor in *Volkswagen II*, the Court finds this argument unpersuasive. *See In re Volkwagen II*, 545 F.3d at 318 (noting that Marshall Division and the residents within are not "in any relevant way connected to the events that gave rise to this suit.").

The Court finds that this factor favors transfer.

### 3. Familiarity of the Forum with the Law that Will Govern the Case

Neither this Court nor the District of New Hampshire is more or less familiar with the law that will govern this case. This case will be governed by patent law that is applied by all federal courts, regardless of the state where they sit.

The Court finds that this factor is neutral.

### 4. Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law.

Because there are no conflict of laws issues that would make this case better suited for either this Court or the District of New Hampshire, this factor cannot weigh either for or against transfer.

Accordingly, this factor is neutral.

## CONCLUSION

After careful consideration of the pleadings, the motion to transfer venue, the responses and replies, and, after weighing the relevant factors, the Court concludes that Ruger has carried its burden of showing that the District of New Hampshire is a clearly more convenient venue for this lawsuit, and "on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Atlantic Marine*, 134 S. Ct. at 581 (quoting 28 U.S.C. § 1404(a)).

Accordingly, Defendant Ruger's Motion to Transfer Venue (Dkt. 18) is hereby **GRANTED**.

The Court **ORDERS** that this case be **TRANSFERRED** to the District of New Hampshire.

SIGNED at Galveston, Texas on July 31st 2016.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE